By the Court.
It is conceded by counsel for defendant in error that the state of Ohio did enter upon and appropriate for canal purposes that portion of the land described in plaintiff’s petition that is actually occupied by the embankment on the north side of the Licking-Summit Reservoir, now known as Buckeye Lake. That being true, the fee simple title to the land so appropriated vested by force of the statute of February 4, 1825, in the state of Ohio, and the title of the state could not be divested by any adverse possession by adjoining proprietors. Therefore the finding and judgment of the court of appeals that the fee of this land occupied by the embankment is in the defendant in error, subject only to the easement of the state to maintain its embankment thereon and thereover, is erroneous, and to that extent must be reversed. It is now the claim of the defendant in error that no such selection, entry or appropriation was made of the land adjoining this embankment and included within the borrow-pit as would vest the title in the state. Upon this question there is no conflict of evidence. It is conceded that the state entered *201 upon this land and dug and removed the soil and earth therefrom for the purpose of constructing the embankments on the north and west sides of this reservoir. It is shown by the uncontradicted evidence in this record that the extent of the material taken therefrom would average one hundred feet wide and three feet deep. This borrow-pit, however, is not regular in its width and depth. The inner line is regular in that it conforms to the outer slope of the embankment, regardless of the course of the embankment, throughout its length. In some places the borrow-pit is wider and the excavation deeper than in others, but throughout its whole course the borrow-pit is well defined by the depression caused by digging the soil and earth therefrom for the purpose of constructing the embankment. This depression or borrow-pit, since the construction of the embankment, has been used as a channel to carry off the water seeping throu.gh and overflowing the embankment. The state of Ohio has several times caused this embankment to be cut, when the waters were so high in the reservoir as to threaten its destruction, to permit the surplus water to run through the cut so made in the embankment into and through the channel of the borrow-pit to natural outlets. The term borrow-pit has a well-defined meaning in the science of civil engineering. It means a pit adjacent to a fill or embankment from which material is taken for the purpose of making the fill or constructing and maintaining the embankment. It is- not the same as the procuring of material from remote places and hauling it to the improvement. On the contrary, it is an appro *202 priation of the land itself adjacent to the improvement and for the purposes of the improvement. The entry of the state upon the land occupied by this borrow-pit was not of a temporary or uncertain character. Nor was it merely here and there at certain points. It was along the entire course of the embankment immediately adjacent to it and absolutely necessary not only for its construction but for its maintenance and equally necessary for drainage purposes at all times since the construction of this embankment.
There can be no doubt whatever that the entry, use, occupation and the destruction of this land for agricultural puorposes by the state, was an appropriation of it within the meaning of the act of February 4, 1825 (23 O. L., 56). Nor can it be doubted that the original owner of this land was then and there entitled under the provisions of that act to full compensation therefor. Certainly the state could not have defended against a claim for compensation upon the theory that its acts, use and occupation of this land and the purposes to which it was put did not constitute an appropriation within the contemplation of the law authorizing it to appropriate land for canal purposes. That being true, the fee simple title, by the terms of the statute authorizing the appropriation, vested in the state of Ohio, and having so vested that title could not be divested by any adverse user by an adjoining proprietor. In this particular instance the land occupied by the embankment and borrow-pit belonged at the time of the appropriation to the United States. In 1828 the congress of the United States, *203 for the purpose of encouraging the building of canals and reservoirs, gave, granted and ceded to the state of Ohio land belonging. to the United States and situated within the state of Ohio that the state might select for canal and reservoir purposes (Sec. 5, 4 Stats, at Large, 306; 8 U. S. Laws, 119). The mere act of selecting and occupying this land by the state of Ohio by authority of the act of congress of 1828 vested the fee simple title to the land so appropriated and selected in the state of Ohio without payment of compensation or damages therefor. No private individual was then interested in any part or parcel of this land. It was solely a question between the state of Ohio and the United States. The fact that in 1842, many years after the state had selected and occupied this land for the purposes named in the act of congress in 1828, the United States government issued a patent deed to the predecessor in title of the defendant in error for the entire quarter section in which this land is situated, could not and does not affect the title of the state thereto. It was held in the case of Strong v. Lehmer, 10 Ohio St., 93, that the fifth and sixth sections of the act of congress granting lands to the state of Ohio for the construction of canals, operated as a present grant, requiring only the identity of the lands to be ascertained to become perfect. It was also held in that case that a purchaser who enters land and takes a patent deed, with full knowledge of a selection in fact, cannot in equity hold the land against a grantee of the state, notwithstanding the imperfect execution of the power to grant the land vested in the state by *204 the act of congress. At the time this patent deed was issued to the predecessor in title of the defendant in error this excavation had been made and the embankment constructed. These were open and obvious acts evidencing that the state had made selection and had appropriated this land for canal purposes. The evidence of the selection was plain and unmistakable and the identity of the land selected beyond question. The patentee could not close his eyes to these conditions. Nor can he now be heard to say that he did not know that which was obvious to the most casual observer. He took under his patent deed from the United States government subject to the title of the state, whatever that title was, and it is apparent that that was a fee simple title of all that portion of the quarter section of land described in the patent that was covered by the waters of the lake and occupied by the embankment and borrow-pit. In other words, the patent deed conveyed to him no more land in that quarter section than the United States government then owned and had the right to convey, and he cannot now rely upon that patent deed to prove his title to land which the United States did not then own and which was then in the open, adverse and exclusive possession of the state of Ohio. The judgment of the court of appeals is reversed and judgment for plaintiff in error.

Judgment reversed.

Nichols, C. J., Johnson, Wanamaker, Newman, Jones and Matthias, JJ., concur.
Donahue, J., not participating.